UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JORDAN POPP,**

    **Plaintiff,**

    v.

**BREWDOG BREWING COMPANY, LLC,**

    **Defendant.**

Case No. 2:24-cv-338
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court on Defendant Brewdog Brewing Company, LLC's Motion to Dismiss Plaintiff's First Amended Class and Collective Action, or in the alternative, to Strike Plaintiff's Class and Collective Action Claims. (Mot., ECF No. 14.) Plaintiff Jordan Popp opposes that Motion (Opp., ECF No. 16), and BrewDog replied in support of its Motion (Reply, ECF No. 17). For the reasons below, the Court **DENIES WITHOUT PREJUDICE** the Motion to Dismiss, and **DENIES** the Motion to Strike.

## BACKGROUND

This case is about whether Brewdog failed to properly compensate its tipped employees. Ms. Popp and those she seeks to represent as a class and collective are Brewdog's current and former servers who were tipped employees.

Brewdog owns and operates a chain of six restaurants in Ohio. (Am. Compl., ECF No. 11, ¶ 14.) Ms. Popp worked as a server at one of Brewdog's locations from May 2022 to August 2022. (*Id.* ¶ 16.) She alleges that she and other employees were paid less than minimum wage for the hours they worked as servers. (*Id.* ¶ 23.) Brewdog, like many other restaurants, paid their servers Ohio's minimum wage minus a tip credit. (*Id.* ¶ 17.) Ms. Popp claims that she performed non-tip

1

producing "side work" that was unrelated to her tipped occupation. (*Id.* ¶ 19.) For example, Brewdog required its servers "to report to work before its restaurants opened and before any customers were present to perform opening work, such as making regular and decaffeinated coffee and ice[d] tea, setting tables, and restocking glasses, cups, and dishes." (*Id.* ¶ 21.) Servers, including Ms. Popp, were also required to perform certain duties to close the restaurant. (*Id.* ¶ 22.) Ms. Popp provides a non-exhaustive list of the side work that she and other servers had to perform, including:

> Refilling salt and pepper shakers, ketchup bottles, and sugar and creamer containers, rolling silverware, folding napkins, setting or clearing tables, sweeping or vacuuming, cleaning beverage stations and other areas of the kitchen and restaurant, preparing food such as salads, side dishes, or bread, and taking out trash.

(Am. Compl., ¶ 20.)

Ms. Popp contends that servers were required to spend a substantial amount of time—more than 20%—performing non-tipping side work. (*See id.* ¶ 19.) But when the servers performed the non-tipping work, Brewdog continued to pay them less than the minimum wage. (*Id.* ¶ 23.) Thus, Ms. Popp asserts that Brewdog engaged in an unlawful pay practice by paying servers a tip-based wage for un-tipped side work in violation of the Fair Labor Standards Act ("FLSA") and Article II § 34a of the Ohio Constitution. (*Id.* ¶¶ 24, 51, 56.) According to Ms. Popp, the practice applied to all servers across Brewdog's Ohio locations. (*Id.* ¶ 29.)

Ms. Popp filed her Complaint on January 26, 2024 (Compl., ECF No. 1) and her first Amended Complaint on April 16, 2024. (Am. Compl.) Brewdog moves to dismiss her Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), or in the alternative to strike the class and collective action allegations. (Mot.)

**MOTION TO DISMISS**

Brewdog argues that the Court should dismiss the Amended Complaint because Ms. Popp failed to sufficiently plead a minimum wage violation under the FLSA or Ohio law. (Mot., PageID 67–68.) Both Parties rely on a 2021 regulation, also known as the 80/20 Rule, that prohibited employers from benefiting from the tip credit if the tipped employee spent a substantial amount of time—more than 20%—performing non-tipping work. 29 C.F.R. § 531.56(e)–(f) ("2021 Regulation"). But that Regulation was vacated after the Motion to Dismiss was fully briefed. *See Rest. L. Ctr. v. U.S. Dep't of Lab.*, 120 F.4th 163, 171 (5th Cir. 2024). Since the Parties did not address the intervening change in law, the Motion is **DENIED WITHOUT PREJUDICE**.

I. **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (clarifying plausibility standard from *Twombly*). Further, "[a]lthough for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly,* 550 U.S. at 555) (internal quotations omitted).

3

## II. Legal Background

Before addressing the merits of Brewdog's Motion, the Court will first summarize the relevant law. The FLSA and Ohio law require employers to pay a minimum wage to certain employees. 29 U.S.C. § 206(a)(1); Ohio Const. Art. II, § 34a. Because the FLSA and Ohio law are governed by the same standards, the Court will analyze the federal and state claims concurrently. *Craig v. Landry's, Inc.*, No. 1:16-CV-277, 2016 U.S. Dist. LEXIS 80489, at *8 (S.D. Ohio June 21, 2016) (Beckwith, J.) (collecting cases); *see also Barnes v. Abraham, Inc.*, No. 2:17-cv-279, 2017 U.S. Dist. LEXIS 195283, at *6 (S.D. Ohio Nov. 28, 2017).

The FLSA requires employers to pay certain employees a minimum wage of at least $7.25 an hour. 29 U.S.C. § 206(a)(1)(c). But there is an exception for "tipped employees," defined as "employee[s] engaged in an occupation in which [they] customarily and regularly receive[] more than $30 a month in tips." 29 U.S.C. § 203(m), (t). Under this exception, an employer may pay tipped employees as low as $2.13 per hour, but if the employee's overall wages do not equal $7.25 per hour, the employer must pay the difference between the earnings and the minimum wage. *Goeble v. Burntwood Tavern Holdings, LLC*, No. 1:22-cv-01733, 2023 U.S. Dist. LEXIS 73055, at *4 (N.D. Ohio Apr. 26, 2023); *see also Haase v. Cameron Mitchell Rests., LLC*, No. 2:23-cv-1316, 2024 U.S. Dist. LEXIS 355, at *3 (S.D. Ohio Jan. 2, 2024) (Watson, J.) (describing this exception as a "tip credit").

If an employee does both tipped and untipped work for an employer, generally the employers may claim the tip credit only against the wages earned for tipping work. 29 C.F.R. § 531.56(e). Under this provision known as the "dual jobs" regulation, employers can take tip credit against wages earned performing limited related duties to the tipping work. *Id.* According to the Department of Labor ("DOL"), these limited related duties do not qualify as dual jobs. *Id.*

4

(distinguishing between an employee who worked two distinct jobs, and someone who had one job with overlapping duties).

### A. The 1967 Guidance

To clarify the dual jobs regulation, the DOL issued opinion letters and handbook provisions. *See Callaway v. DenOne LLC*, 1:18-CV-1981, 2019 U.S. Dist. LEXIS 37732, at *12–14 (N.D. Ohio Mar. 8, 2019) (describing how the DOL issued guidance on the dual jobs regulation since 1967). One such interpretation known as the 20% Rule, or the 80/20 Rule, stated that employers could claim the tip credit if tipped employees spent less than 20% of their hours worked on untipped related duties. *Id.* (citing the Field Operations Handbook (FOH) Section 30d00(f) codified in 1988); *Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1175–77 (11th Cir. 2021) (summarizing the history of the 80/20 Rule).

### B. The 2018 Guidance

For over thirty years, the 80/20 Rule remained intact. *Id.* But in 2018, the DOL issued an opinion letter purportedly rescinding it. *See* U.S. Dep't Labor, Wage & Hour Div., Opinion Letter FLSA-2018-27, 2018 DOLWH LEXIS 29 (Nov. 8, 2018) (2018 Guidance). The new guidance removed any limitation on an employer's ability to take the tip credit for the time a tipped employee performed non-tipped duties, if those duties are performed contemporaneously with, or immediately before or after, tipped duties. *Id.*

### C. The 2021 Regulation

The DOL reversed course in 2021 after a change in presidential administrations. Following a notice and comment period, the DOL promulgated a new dual jobs regulation. 29 C.F.R. § 531.56(e)–(f) (2021 Regulation). The new provision defined three categories of tipped work: (1) tip-producing work; (2) untipped, directly supporting work, which to qualify for the tip credit,

5

must account for less than 20% of an employee's hours and may not be performed longer than 30 consecutive minutes at a time; and (3) untipped, unrelated work, for which employers may not claim any tip credit. *Id.* § 531.56(f); *see also Goeble*, 2023 U.S. Dist. LEXIS 73055, at *7.

The 2021 Regulation largely adhered to the earlier version of the 80/20 Rule, but the 2021 Regulation distinguished between directly supporting work and unrelated work. *Compare* 29 C.F.R. § 531.56(e) (effective through 2021), with 29 C.F.R. § 531.56(e)–(f) (2021 Regulation); *see Rafferty*, 13 F.4th at 1178. Maintenance work like cleaning bathrooms and washing windows was unrelated to the tipped occupation of a server, as was food preparations. *Harrison v. Rockne's Inc.*, 274 F. Supp. 3d 706, 712 (N.D. Ohio 2017) (citing FOH § 30d00(f) (2016) and explaining that a server who was required to do maintenance work was "effectively employed in dual jobs."). But tip-producing work included providing table service, as well as directly supporting work like dining room prep, refilling salt and pepper shakers and ketchup bottles, rolling silverware, folding napkins, sweeping or vacuuming under tables in the dining area, and setting and bussing tables. 29 C.F.R. § 531.56(f)(2)–(3) (2021 Regulation).

**D. The Fifth Circuit's Decision in *Restaurant Law Center***

The 2021 Regulation applied during Ms. Popp's employment at Brewdog from May 2022 to August 2022 but faced legal challenges soon after. Two interest groups sued DOL in the Western District of Texas seeking to enjoin enforcement of the 2021 Regulation. *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 2023 U.S. Dist. LEXIS 115630, *1–2 (W.D. Tex. July 6, 2023). The district court granted the DOL's motion for summary judgment and concluded that the 2021 Rule was a permissible interpretation of an ambiguous statutory term that was entitled to deference under *Chevron*. *Id.* at *35 (citing *Chevron USA Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). While an

6

appeal of the district court's decision was pending, the U.S. Supreme Court overruled *Chevron*. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

Rather than affording deference to the 2021 Regulation, the Fifth Circuit concluded that the 2021 Regulation was arbitrary and capricious and contrary to the text of the FLSA. *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 120 F.4th 163, 171 (5th Cir. 2024) (applying *Loper Bright*). According to the Fifth Circuit, the term "occupation" foreclosed the task-by-task analysis of supporting worked used under the 80/20 Rule. *Id.* at 172. It would contradict the statutory term "tipped employee" to allow an employee to be a "tipped employee" while performing certain tasks and to transform them into a "non-tipped employee" when performing other tasks. *Id.* at 173. As a result, the Fifth Circuit vacated the 2021 Regulation nationwide, and the DOL did not seek certiorari from the Supreme Court. *Id.* at 177; *see also Hallman v. Flagship Rest. Grp., LLC*, No. 8:24CV222, 2025 U.S. Dist. LEXIS 7585, at *14 (D. Neb. Jan. 15, 2025) (analyzing the effect of the Fifth Circuit's vacatur on other district courts outside the Fifth Circuit).

"When a court vacates an agency's rule, it restores the status quo before the invalid rule took effect." *Keystone-Conemaugh Projects LLC v. United States Env't Prot. Agency*, 100 F.4th 434, 446 (3d Cir. 2024). The Fifth Circuit's vacatur clarified that it invalidated the 2021 Regulation, "insofar as it modifies 29 C.F.R. § 531.56 as promulgated in 1967" but did not restore the 2018 Rule. *Rest. L. Ctr.*, 120 F.4th at 177. So the law returns to the status quo under the 1967 dual jobs regulation. *See Hallman*, 2025 U.S. Dist. LEXIS 7586, at *15 (applying the 2019 version of the dual jobs regulation and pre-80/20 Rule case law); *see also Green v. Perry's Rests. Ltd.*, Civil Action No. 21-cv-0023-WJM-NRN, 2024 U.S. Dist. LEXIS 219993, at *10 (D. Colo. Dec. 5, 2024) (explaining that the vacatur "preserve[d] that portion of the 2021 Final Rule withdrawing

7

the 2020 Final Rule's *different* revisions to the Dual Jobs Regulation, which was unchallenged[.]")

Thus, the current operative version of the dual jobs regulation provides:

> In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e) (1967 version; current version).

### III. Analysis

The Parties filed their briefs on the motion to dismiss before the Fifth Circuit decided *Restaurant Law Center* on August 23, 2024. (*See* Mot. (filed Apr. 30, 2024); Opp. (filed May 21, 2024); Reply (filed June 4, 2024).) Both Parties rely on the 2021 Regulation prohibiting an employer from invoking the tip credit if a tipped employee spent a substantial amount of time performing non-tipping side work. (*See* Mot., PageID 68 (citing 29 C.F.R. § 531.56(f)(4)); *see also* Opp., PageID 86 (same).) For her part, Ms. Popp argues that she had to spend a substantial amount of time—more than 20%—performing non-tipping work. (Opp., PageID 86.) Brewdog counters that she has not sufficiently alleged that she spent more than 20% of the hours in a workweek performing side work and opening and closing duties. (Reply, PageID 95.) Since the Parties filed their briefs before the Fifth Circuit's decision, neither party addressed the effect, if any, of the Fifth Circuit's vacatur on Ms. Popp's claims.

It is unclear to this Court whether the Sixth Circuit would agree with the universal scope of the vacatur remedy under the Administrative Procedure Act ("APA"). *Skyworks, Ltd. v. CDC*,

542 F. Supp. 3d 719, 734–35 (N.D. Ohio 2021) (explaining that the Sixth Circuit has not expressly addressed the scope of the vacatur remedy); *see also Arizona v. Biden*, 31 F.4th 469, 484 (6th Cir. 2022) (Sutton, C.J., concurring opinion) (noting that the "set aside" provision of APA § 706(2), "raises a question [about the scope of the remedy]; it does not answer it."). Without guidance from the Sixth Circuit, or briefing by the Parties, the Court will not opine on the effect *Restaurant Law Center* would have on this case. Given the intervening change in law, the Court **DENIES WITHOUT PREJUDICE** Brewdog's Motion to Dismiss (ECF No. 14).

## MOTION TO STRIKE

In the alternative, Brewdog moves to strike Ms. Popp's class action allegations.

**I.  Standard of Review**

Federal Rule of Civil Procedure 12(f) allows a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Federal class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. If the Court determines that the Complaint does not allege facts that would satisfy the requirements of Rule 23, the Court may strike class action allegations before any motion for class certification. *Progressive Health & Rehab Corp. v. Quinn Med., Inc.*, 323 F.R.D. 242, 244 (S.D. Ohio 2017) (Marbley, J.); *Geary v. Green Tree Servicing, LLC*, No. 2:14-cv-00522, 2015 U.S. Dist. LEXIS 35059, at *41 (S.D. Ohio Mar. 20, 2015) (Marbley, J.) (citing *Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011)). This Court has warned that "courts should exercise caution when striking class action allegations based solely on the pleadings, because class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Geary*, 2015 U.S. Dist. LEXIS 35059, at *41–42 (quoting *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 U.S. Dist. LEXIS 63122, at *6 (S.D. Ohio May 7, 2014) (Graham, J.)).

9

To be certified as a class, the plaintiff must demonstrate that the putative class meets the requirements of Rule 23(a) by showing that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The plaintiff must also show that the class action falls into one of the three categories under Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 34 (2011). Motions to strike class action allegations are generally disfavored by this Court. *Geary*, 2015 U.S. Dist. LEXIS 35059, at *42–43 (collecting cases and explaining that the Court lacks the foundation on a motion to strike to conduct the rigorous analysis required by Rule 23).

Similarly, a plaintiff may sue an employer under the FLSA on behalf of similarly situated employees who "opt-in" by consenting to join the action. 29 U.S.C. § 216(b); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). For a court to authorize notice of the action to other employees, "plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Clark v. A&L Homecare and Training Ctr., LLC*, 68 F.4th 1003, 1010–11 (6th Cir. 2023). Potential plaintiffs can be similarly situated where their claims are "unified by common theories of defendants' statutory violations," such as "a single, FLSA-violating policy[.]" *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 585 (6th Cir. 2009) *abrogated on different grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016).

**II.     Analysis**

Brewdog argues that the Court should strike Ms. Popp's collective action and class action allegations for two reasons. First, Brewdog contends that Ohio's statutory minimum wage provision (Ohio Revised Code § 4111.14(K)) applies to Ohio's constitutional minimum wage provision (Section 34a of Article II) and requires parties to affirmatively opt-in to class actions.

10

(Mot., PageID 70–74.) Thus, Ms. Popp cannot maintain a Rule 23 class action because the opt-out requirements conflict with the opt-in provision of the minimum wage statute. (*Id.*) Second, Brewdog argues that even if Ms. Popp can maintain class action allegations, she cannot satisfy the requirements under Rule 23 or show that she is similarly situated to other Brewdog employees to proceed as a collective action under the FLSA. (Mot., PageID 74–76.) Accordingly, the Court should strike the class and collective actions allegations in Count Two of the Complaint. (*Id.*) This Court disagrees.

      **A. Ms. Popp may bring hybrid collective and class action allegations under the FLSA and the Ohio Constitution.**

Ms. Popp's Complaint asserts violations of Article II, Section 34a of the Ohio Constitution. (Am. Compl., ¶¶ 29–47.) Ohio has both a constitutional minimum wage provision and a statutory minimum wage provision. *See* Ohio Rev. Code § 4111.01 *et seq.*; Ohio Const. Art. II, § 34a. The statutory minimum wage provision is structured like the FLSA and provides that only those who affirmatively "opt-in" to an action may be a party to that action. Ohio Rev. Code § 4111.14(K). Brewdog contends that this procedural requirement also applies to the constitutional provision and precludes Ms. Popp from bringing class action allegations under Ohio law. (Mot., PageID 70–76.)

Ms. Popp argues that Ohio's statutory opt-in procedure does not apply to a claim brought under Section 34a. (Opp., PageID 83 (citing *Haase*, 2024 U.S. Dist. LEXIS 355, at *27)); *see also Castillo v. Morales, Inc.*, 302 F.R.D. 480, 489 (S.D. Ohio 2014) (Marbley, J.) (considering the issue in the context of a declaratory judgment); *Brenneman v. Cincinnati Bengals, Inc.*, No. 1:14-CV-136, 2014 U.S. Dist. LEXIS 152031, at *11 (S.D. Ohio Oct. 24, 2014) (Barrett, J.) ("Defendant next argues that Plaintiff's Rule 23 class action allegations should be dismissed because OMFWSA § 4111.14(K), as an implementing provision of Article II, § 34a, provides for only opt-in collective actions for minimum wage violations . . . [T]he Court disagrees.").)

11

Despite acknowledging this precedent, Brewdog asserts that the cases above are based on flawed reasoning and are not binding. (Reply, PageID 98–99.) First, Brewdog contends that Section 34a is not self-executing. (*Id.* PageID 99.) But as Brewdog acknowledges, this Court has repeatedly ruled that Section 34a is self-executing. *Haase*, 2024 U.S. Dist. LEXIS 355, at *28; *Castillo*, 302 F.R.D. at 487–89; *Brenneman*, 2014 U.S. Dist. LEXIS 152031, at *11; *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 U.S. Dist. LEXIS 189878, at *17 (S.D. Ohio Nov. 5, 2018) (Rice, J.). Brewdog's arguments to the contrary are unpersuasive and repeat unsuccessful arguments refuted by this Court in the above line of cases. The Court sees no reason to depart from its prior decisions. *See Haase*, 2024 U.S. Dist. LEXIS 355, at *28.

Second, even if Section 34a is self-executing, Brewdog argues the opt-in procedure still applies. (Reply, PageID 101–03.) Brewdog reasons that "Plaintiff cannot use the Ohio Constitution to subvert the framework established by the General Assembly for minimum wage claims." (*Id.* PageID 103.) But the Ohio Constitution is not subverting the statutory framework—the constitutional and statutory framework co-exist independently. As explained in *Haase*, Section 34a established a framework to determine who is entitled to a minimum wage, how to enforce the right to a minimum wage, and the damages and limitations period that accompany the cause of action. *Haase*, 2024 U.S. Dist. LEXIS 355, at *29 (citing *Castillo*, 302 F.R.D. at 489). Although the statute mirrors Section 34a, it governs only violations of that section and "does not supplant a plaintiff's right to proceed directly under [Section 34a]." *Id.* (citing *Brenneman*, 2014 U.S. Dist. LEXIS 152031, at *13). As a result, nothing prevents Ms. Popp from proceeding under Section 34a, instead of Ohio's statutory minimum wage law.

To avoid this result, Brewdog tries to create a conflict between Rule 23 of the Federal Rules of Civil Procedure and Ohio's statutory minimum wage law. (*See* Mot., PageID 73–74.) Brewdog

12

argues that "[i]t is well-settled that where the Federal Rules of Civil Procedure . . . conflict with the state statute on substantive matters, the state statute supersedes the conflicting Federal [R]ule." (*Id.* PageID 74.) Brewdog analogizes this case with *Collins* and *Hine*, two cases where this Court concluded that Rule 23, as applied, violated the Rules Enabling Act ("REA") because it effectively abridged a state-created right or remedy under Ohio's statutory overtime provision (Ohio Revised Code § 4111.10(C)). *Hine v. Ohiohealth Corp.*, 680 F. Supp. 3d 861, 870 (S.D. Ohio 2023) (Watson, J.); *Collins v. Greater Cincinnati Behav. Health Servs.*, No. 1:23-cv-578, 2024 U.S. Dist. LEXIS 7036, at *7 (S.D. Ohio Jan. 12, 2024) (McFarland, J.).

Ms. Popp does not address these arguments. (*See* Opp.) Nonetheless the Court notes that courts are divided on this question and many courts have reached the opposite conclusion—rejecting the argument that the REA prohibits a plaintiff from bringing simultaneous FLSA opt-in actions and Rule 23 class actions. *See, e.g.*, *Hine*, 680 F. Supp. 3d at 869 (collecting cases that held opt-in mechanisms are procedural, rather than substantive for REA analysis); *see also Monahan v. Smyth Auto., Inc.*, No. 1:10-CV-00048, 2011 U.S. Dist. LEXIS 9877, at *30 (S.D. Ohio Feb. 2, 2011) (Spiegel, J.) (noting that this Court has allowed hybrid class and collective actions to proceed).

The Court finds that Brewdog's challenge to Ms. Popp's ability to bring her state-law claims under the REA are premature. At this time, Ms. Popp's class action allegations in Count Two can be properly maintained under Article II, § 34a of the Ohio Constitution and need not be dismissed. Brewdog's motion to dismiss, or in the alternative, to strike the class action allegations is denied, but Brewdog may later challenge class certification on these grounds.

### B. The motion to strike Count Two is premature.

Brewdog next argues that Ms. Popp cannot meet the requirements of Rule 23 to certify a class action, and that she has failed to allege how she is similarly situated to other employees to maintain a collective action under the FLSA. (Mot., PageID 74–76.) Therefore, the Court should strike the collective and class allegations in Count Two of the Complaint. (*Id.*)

To support its position, Brewdog cites *Shoemo-Flint v. Cedar Fair, L.P.*, No. 3:22-cv-1113, 2023 U.S. Dist. LEXIS 111873 (N.D. Ohio June 28, 2023). That case involved a group of servers challenging their employer's policy requiring them to perform non-tipping side work. *Id.* at *2. The court granted the defendant's motion to strike the collective action allegations. *Id.* at *8. But the court focused on the fact that plaintiff's complaint lacked allegations that she and other members of the proposed collective suffered from the same FLSA-violating policy. *Id.* at *7. Without such factual allegations, plaintiff could not establish a strong likelihood that she was similarly situated to the other members of the collective. *Id.*

Brewdog argues that the same reasoning should apply here because Ms. Popp "does not indicate at which of [Brewdog]'s six Ohio locations she worked, nor does she indicate how she has any knowledge that [Brewdog] employs uniform policies across its six Ohio locations." (Mot., PageID 76.) Since she worked for Brewdog for "no more than four months, . . . she cannot plausibly establish all other servers employed by [Brewdog] during the relevant three-year period were subject to the same alleged violations of the FLSA and Ohio law." (*Id.*)

Ms. Popp counters that *Shoemo* is distinguishable because the court only evaluated whether the plaintiff could show that she was similarly situated to the potential members of the collective, but the court did not engage in the more "rigorous" Rule 23 certification analysis. (Opp., PageID

14

90.) She argues that a motion to strike is a disfavored remedy and Brewdog's Motion is premature without the opportunity to conduct discovery. (*Id.*)

Brewdog responds that Ms. Popp has failed to show "how discovery or for that matter more time would . . . fix [her] lack of knowledge regarding whether other servers employed by [Brewdog] during the relevant three-year period were subject to the same alleged violations of the FLSA and Ohio law." (Reply, PageID 97.)

The Court disagrees with Brewdog. Ms. Popp's Amended Complaint is distinguishable because she provides more details than the plaintiff in *Shoemo* provided, and at minimum, she alleges when, and for how long, she worked for Brewdog. (Compare Am. Compl., ¶ 16 with *Shoemo*, 2023 U.S. Dist. LEXIS 111873, at *5 (explaining that plaintiff made "no indication . . . when she began working for Defendant, how long she worked for Defendant, or whether she still works for Defendant.").) Discovery will enable Ms. Popp to access Brewdog's payroll records and more readily identify members she alleges were subject to the same FLSA-violating policy. Without the benefit of discovery, the Court lacks the foundation to conduct the "rigorous analysis" required by Rule 23. *Geary*, 2015 U.S. Dist. LEXIS 35059, at *42 (citations omitted). Assessing whether Ms. Popp satisfied the requirements to maintain a Rule 23 class action or an FLSA collective action would be more appropriate on a fully briefed class certification motion, or motion for court authorized notice, rather than on a motion to strike at the pleading stage.

Accordingly, the Court will not strike Ms. Popp's class or collective allegations. The Motion to Strike is **DENIED**. The Court expresses no opinion on the ultimate merits of class certification.

## INTERLOCUTORY APPEAL

Brewdog contends that if the class action allegations under Count Two of the Complaint survive, Brewdog "will seek this Court's certification [of an interlocutory appeal], if necessary, following [the Court's] order resolving this motion." (Mot., PageID 76.) In its Reply in support of its Motion to Dismiss, Brewdog frames its request differently. It asks the Court to certify questions of state law on the interplay between Section 34a and Ohio Revised Code § 4111.14(K) to the Ohio Supreme Court under Ohio Supreme Court Rule of Practice 9.01. (Reply, PageID 103–04.)

It is "well-established that a party cannot raise new issues in a reply brief." *In re FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581, 599 (N.D. Ohio 2004) (citation omitted). Since Brewdog did not make this argument in its original Motion, and Ms. Popp did not raise it in her opposition, she has not had an opportunity to respond to Brewdog's newly requested relief. The Court concludes therefore that this argument fails for procedural reasons and **DENIES** Brewdog's request to certify questions of state law to the Ohio Supreme Court.

As for Brewdog's request that the Court certify an interlocutory appeal, the Court construes Brewdog's motion on these grounds an impermissible request for an advisory opinion. To prevail on a motion under 28 U.S.C. § 1292(b), the moving party bears the burden of showing: "(1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation." *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002). An interlocutory appeal is also an extraordinary remedy that should be employed only in extraordinary cases. *In re GM, LLC*, No. 19-0107, 2019 U.S. App. LEXIS 29059, at *1 (6th Cir. Sep. 25, 2019).

Brewdog made no effort to develop arguments to show that this case is the extraordinary case that warrants this exceptional form of relief. (*Id.* PageID 76.) Although Brewdog cites to 28 U.S.C. § 1292(b), Brewdog does not argue how it satisfied the requirements for an interlocutory appeal. (*Id.*) Instead, Brewdog merely warns the Court that if the Court allows Ms. Popp's "class claim to survive, it will seek an interlocutory appeal of [her] ability to pursue claims based on the Constitution alone." (*Id.*) Brewdog's Reply does not respond to arguments raised by Ms. Popp that Brewdog is not entitled to an interlocutory appeal. (*See* Opp., PageID 90–91; *see also* Reply.) Accordingly, the Court declines Brewdog's invitation to issue an advisory opinion about the hypothetical merits of its interlocutory appeal.

## CONCLUSION

For these reasons, Brewdog's Motion to Dismiss is **DENIED WITHOUT PREJUDICE**. Alternatively, Brewdog's Motion to Strike is **DENIED**. (ECF No. 14.)

This case remains open.

**IT IS SO ORDERED.**

**1/30/2025**                **s/Edmund A. Sargus, Jr.**
**DATE**                  **EDMUND A. SARGUS, JR.**
                   **UNITED STATES DISTRICT JUDGE**